Case No. 17-11439. May it please the Court. Tracy Dreisbull, Assistant Federal Public Defender, on behalf of Mr. Antczak. Today I'm going to discuss two issues. Why Mr. Antczak's disclosure of the password to his cell phone was a testimonial communication and why the variance imposed at sentencing was both procedurally and substantively unreasonable. I'll rest on my brief with respect to the remaining issues unless there are questions. It is the use of the contents of the individual's mind that has long been held to be the crux of what makes a communication testimonial for purposes of the Fifth Amendment. To exemplify this point, the Supreme Court has actually used the example of giving the inquisitor the combination to a safe. In this case, Mr. Antczak was quite literally asked to give the inquisitor the combination to his cell phone. When he did so, he made use of the contents of his mind and made a testimonial communication. Let me ask you something, though. Wasn't law enforcement able to and didn't law enforcement obtain the same communications through a separate means, not through the cell phone? Only the KICS communications. The real prejudice from the search of the cell phone was the fact that Mr. Antczak had been Googling to catch a predator on the day before the offense. Mr. Antczak's defense was that this was all a fantasy. There was evidence in the record, both from the government's own witness, Agent Matt Fowler, that there are people on the Internet who have these sorts of very disturbing conversations but never act upon them. It is all fantasy. There was evidence in the record that Mr. Antczak had had at least two prior similar relationships on the Internet that were all pretend. Except that here he actually shows up and he's got the iTunes card, which he knows is supposed to be a gift for the nine-year-old child. I mean, that seems like it takes it to the next level. I would certainly agree there was more than sufficient evidence in this case, Your Honor. But the government made tremendous use of this to catch a predator. There was also this issue of this motherless.com, which I didn't really focus on in the briefs because it turned out to be a double-edged sword. By closing argument, the government was arguing, ignore the motherless.com because that may all have been fantasy. But they got all this really disturbing evidence that they put into trial to refute the only defense in this case, which was, yes, he did have the iPhone, the iTunes card. He showed up. But that could still not necessarily have been inconsistent with a fantasy relationship with someone who turned out to be an adult. The only question was whether he really knew there was an actual minor involved or there was supposed to be an actual minor involved. And they got that evidence by the use of the information on his cell phone, which was taken in violation of Miranda and should have been suppressed. I also would like to discuss the sentencing issue. And I'm pausing because I'm wondering if there were a couple points I wanted to make with respect to the harmlessness as well. There was also evidence in the trial that in these prior relationships Mr. Ansack had with individuals who pretended either to be minors or to have access to minors that were not proven to be true minors. He at one point had asked this one person for videos. And at one point this man who had pretended to be a 14-year-old girl says, you know I'm a guy, right? And he responds, yes, I figured that when you would never make videos for me. He never asked Agent Fowler for a video. He never asked to speak to this little girl on the phone. He didn't do all these things that the evidence in this very same case would have shown he might have done to obtain proof this was a real child. Moving on to the sentencing. The sentencing is both procedurally and substantively unreasonable in this case. It is procedurally unreasonable because it relied on two factors which were either clearly erroneous and objectively refuted by the record or else completely speculative. And the first is when the district court stated, I think Mr. Anzac's criminal history category woefully understates his true criminal background. Mr. Anzac had one prior offense. He had no other prior arrests. I believe it's paragraph 31 to 33 of the PSI, nothing else. For that one prior offense he got one criminal history point. Even if he had been sentenced to a period of incarceration, the most he would have gotten for that would have been three criminal history points. That would have placed him in category, in level 34 which is where he was after the district court found he deserved acceptance and responsibility at sentencing. That would have placed him into 168 to 210. To get to 360, one would literally have to go off the chart provided by the United States Sentencing Commission in level 34. Maybe I misunderstood. I thought the district judge's point was that he pled out to a lesser count but when you look at what he actually did, it seemed like there was enough to convict him of the count he was actually, or the crime he was actually charged with which would have carried with it the potential for a much higher sentence which would have translated into more criminal history points. But I may have misunderstood. That's exactly what I'm saying, Your Honor. But the most criminal history points he could have gotten for that crime would have rendered his guideline range 168 to 210. The court went all the way to 360. And I understand that the court doesn't have to go incrementally anymore with a horizontal departure like it used to, but I think the fact that it's literally off the chart is a sign, a symptom of unreasonableness. On the other hand, I mean, I don't want to get into the nature of the communications, you know, the exact words, but they were, you know, if you read these communications that occurred over a month, they were pretty lurid and descriptive and some of them were directly with, you know, someone who represented herself to be a nine-year-old child. And they were pretty equally lurid and unfortunate. And then he showed up. And so, I understand your first point is, well, it was all just a fantasy, but by the time that the judge was engaged in the sentencing, the jury, you know, if you were to . . . if you did not succeed on your first point, why couldn't the judge consider the extreme nature of these communications and some of the things that he said he wanted to do to a nine-year-old child? Well, I . . . there's no dispute that the communications in this case were graphic and actually gave reasons for the sentence that don't justify it. And the second one was that he either did not avail himself of therapy or is not amenable to therapy. That is also affirmatively refuted by the record. But didn't he also talk about the nature of the offense? Your Honor, my recollection was that he focused on the prior offense and the need for specific deterrence. This was a very disturbing graphic communication. But the United States Sentencing Commission is presumed to have reviewed and taken into the 3553A factors of every crime, and it suggested a much, much lower offense, a much, much lower sentencing range for this offense. It suggested, with acceptance and responsibility, because there is the belief that one who accepts responsibility and admits the need for treatment is less likely to recidivate. It suggested a 151 to 188. Now, the government advocated 188 to 235. The sentence the district court imposed was a decade higher than even that advocated by the government. And so, I'm not suggesting this was not a serious offense that did not warrant a serious period of incarceration. But the sentence imposed was off the chart and unjustified by any of the statements the district court made. The Supreme Court recently reiterated that the parsimony command is a broad command, that sentences should be sufficient but not greater than necessary. And so, the question is, what in the record shows that the sentence even advocated by the government in this case, 19 and a half years, would not have been sufficient to deter Mr. Ansack from future criminal crime? Because the way I read the transcript, the court was really concerned with specific deterrence when he talked about the escalation. And that is a valid consideration. But you have to look at the fact that Mr. Ansack was on probation from the state court for four and a half years. There's evidence in the record provided by Dr. Christina Miller that he complied with that probation and showed significant progress. So the suggestion that he's not capable of conforming his conduct is belied by the record. The Supreme Court held in Gaul that a deviation from the guideline must be supported a sufficiently compelling, the justifications must be sufficiently compelling to support the degree of the variance. A major variance must be by more, supported by more justifications than a minor one. This is a major variance. It is almost double, it was a 91% by my calculation, over the high end of the guideline range. It is a decade more than the government had anticipated. The number seems almost arbitrary. Where we get to 360 is unclear. The sentence in this case, the court was trying, I believe, when it talked about the criminal history to avoid an unwarranted disparity, it created an unwarranted parity. The 30-year sentence imposed for Mr. Ansack was the same as that imposed for Mr. Irie, who this court called the worst of the worst and perhaps the most egregious sex offender ever prosecuted in the circuit. It is the same as someone who did not admit responsibility for his offense, did not acknowledge the need for treatment, and yet who had at least three prior incarcerated sentences, so perhaps a serial rapist. And it is the same as the 30-year sentence being served by Patrick's father, who is now serving a sentence in state prison for molesting three children in his life when Patrick was six to eight years old. His father wasn't convicted specifically of raping, molesting Patrick, but he later did admit the sexual abuse. Patrick was also molested from six to eight years old by an older relative. And there can be no doubt that that victimization he suffered as a child led to his disorder and led to the criminality in this case. And thankfully, Mr. Ansack was caught before he ever touched a child. When both in the Broward County case and in this case, he was asked over and over in interrogation in Broward County and by Agent Fowler as an undercover, who he had no incentive to lie. Have you ever done this before? He never has. Agent Fowler even asked if he had child pornography, and he did not. There is nothing in the record to suggest he has ever done this before. The court in Irie recognized that evidence showing pedophilia is a treatable disorder. The reason why we impose harsh sentences is because we believe these people are capable of conforming their conduct, and there's nothing to suggest Patrick wouldn't be. He had treatment before, I thought, and he really hadn't participated enthusiastically or gotten much out of it, and immediately after supervised release was over, he escalated his behavior. Well, he didn't get cured, but the evidence is that he completely complied, and that was from Dr. Christina Miller's report, which is in the record under seal. He thought he conceded that he really wasn't getting anything. He didn't acknowledge that to people while he was going through. Correct. It didn't cure him. It didn't make him better. It didn't make him stop having these ideas. But for the four and a half years while he was in that treatment, he did not re-offend. And so, for the 19 and a half years the government suggested, for a lifetime of supervision, there is ample evidence in this record that he will be capable of re-entering society and not re-offending. And there's just simply nothing in the record to suggest that a 30-year sentence was necessary. Thank you, counsel. And you've reserved three minutes. May it please the court, counsel, good morning, your honors. Sivashree Sundaram on behalf of the United States, and with me today is trial counsel Kathy Koontz. Your honors, first, to address the Fifth Amendment issue that counsel raised. First of all, this issue is foreclosed by Smith v. Wainwright. This is a very simple matter. However, to address what your honor correctly noted, we already had all of the kick messages in this case. Counsel discussed the web searches for motherless.com and to catch a predator. However, we actually already had some of that information in the record as well. We didn't have the web searches. But in government's exhibit nine on page two, the defendant told the undercover that he was into motherless.com. He specifically discussed motherless.com on there. He said he was into motherless.com and incest and other weird stuff. The defendant also told the undercover on government's exhibit nine on page 25 that he didn't want to end up on to catch a predator. So while we didn't have the specific web searches for those that the defendant conducted, we already knew that information through the specific text messages that the defendant exchanged with the undercover in this case. If there are no further questions about that issue, your honors, I'll turn to the reasonableness of the sentence in this case. Judge Scola did not abuse his discretion in this case when he imposed an upward variance of 360 months of imprisonment. He thoroughly and sufficiently justified the upward variance in this case in Documentary 101 on pages 14 to 15 was the primary portion of where he justified this. As your honor correctly noted, when Judge Scola was talking about the prior offense being woefully understated here, I think he was talking about the seriousness of that prior offense, the fact that he pled to only felony obscenity, the fact that, which is in the record that he was sentenced to only five years probation. He actually ultimately ended up getting early termination of that probation. And within just months of that early termination, he was online talking to the undercover in this case, exchanging these sexually explicit text messages. In addition to that, regarding the therapy issue that was raised, what Judge Scola said was that the defendant either didn't avail himself of the therapy, or was not amenable to it, or wasn't able to conform his conduct, and so that creates a danger to people. And Judge Scola is correct. Basically, whatever the reason for it, Mr. Ansag had therapy available to him as an adult. The judge didn't even consider the therapy available to him as a child. Whatever the reason was, that therapy didn't work, and here he was re-offending and escalating his crimes. In fact, not just re-offending with viewing child pornography again, but here he was explicitly attempting to entice a minor to engage in sexually explicit conduct. And so the judge noted the seriousness of the offense. The judge noted the nature and seriousness of the offense, the history and characteristics of the defendant, and noted the need for deterrence and the need to protect the public in this case. And so the district court sufficiently justified the extent of the variance in this case, because the defendant showed that he would and could re-offend, and in fact, escalated his behavior if anything. If this court has no further questions, we would ask that you affirm the conviction and sentence in this case, and we'd rest on our final. Thank you. Thank you. Thank you. Your Honor, this court doesn't even need to get to the Smith v. Wainwright issue. The Fourth Amendment shouldn't even come into play. What the United States Supreme Court held in Patain, United States v. Patain, is that the Fifth Amendment clause is self-executing. No man shall be compelled in any criminal case to be a witness against himself. Evidence which is taken in violation of the Fifth Amendment, which the government has not contested here. And the district court in the hearing spoke about Miranda, but in his written order he finds both a Fifth Amendment and a Miranda violation. The government has not appealed that. When there is a Fifth Amendment violation, evidence and any evidence derived from it is automatically excluded. That is a bright line rule. It has been enforced for over 50 years. We don't even get to the Fourth Amendment issue, which is what Smith v. Wainwright and what Hidalgo addressed, because we are talking about a testimonial statement. And the government has never even argued that the password, I guess they did argue it in the district court, but they have never argued that it's any different than what this court held to be testimonial in the Enright grand jury subpoena case that we've relied on in the briefs. To catch a predator, they had no idea that Mr. Ansack was Googling to catch a predator 11 times on the day before the offense. And the prosecutor used this six times in closing argument. This was a two-day trial. There were three witnesses. It was Agent Fowler, Agent Humphrey, and the 404B evidence. The only question was, did he really know this was a child? And to prove that, the prosecutor in closing says, how do we know? We know because he's Googling to catch a predator. And why on earth is he Googling to catch a predator if he thinks he's going to meet an adult? And that was a very powerful evidence that the government had that they only got because they took it from the compulsion of Mr. Ansack giving them the password to his telephone. With respect to the sentence, again, the United States Sentencing Commission has determined what is necessary to protect people from these crimes. And the only evidence in the record is that under proper treatment and supervision, Patrick Ansack was able to conform his conduct for four and a half years. There's simply nothing in this case that justifies doubling the guideline range. And the district court certainly didn't point to anything. Even if it had, I would submit to the court that these statements made by the district court suggest that it was relying on erroneous information. We do not put people in prison because they have a disorder that aren't cured. We put people in prison based on their conduct. And the United States Sentencing Commission has determined the appropriate sentence for this crime is up to 15 years and a half with acceptance, up to 19 and a half without. There's nothing in the record that suggests a 30-year sentence was necessary in this case for someone who the evidence suggests has never done this before, was egregiously abused as a child, and we know that and there's no dispute about that, and is amenable to treatment and is able to conform his conduct with supervision. Thank you, counsel. We will be in recess.